STATE of Minnesota, Respondent,

v.

Keith Charles WILLIAMS, Appellant.

No. C1–89–1167.

Court of Appeals of Minnesota.

Feb. 27, 1990.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Michael Richardson, Caroline H. Lennon, Asst. County Attys., Minneapolis, for respondent.

John M. Stuart, State Public Defender, Mark F. Anderson, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by LANSING, P.J., and HUSPENI and KALITOWSKI, JJ.

## OPINION

LANSING, Judge.

Appellant Keith Williams challenges his felony and gross misdemeanor convictions of malicious punishment of a child, Minn. Stat. § 609.377 (1986). We do not agree that the statute as applied is unconstitutional or that the evidentiary rulings are incorrect. Because the evidence is suffi-cient to support the two convictions, we affirm.

## FACTS

A Hennepin County jury found Keith Williams guilty of malicious punishment causing substantial bodily harm to an eight-year-old child (felony) and causing substantial emotional harm to a six-year-old child (gross misdemeanor). The mother of the two children, V.B., is involved in a relationship with Williams and they have three younger children in common.

Although the evidence is conflicting on whether Williams lived with V.B. and her children when the charges originated, he acknowledged that he visited often. The children considered Williams their "daddy," even though the two oldest children knew their "real daddy" lived in another state.

Police officers executed a search warrant at V.B.'s apartment as part of a drug and child abuse investigation. In addition to discovering evidence of drug dealing, the police reported that the children were living in a squalid, vermin-infested apartment. Because of the physical condition of the children and the condition of the apartment, the children were taken to Hennepin County Medical Center.

The physical examinations confirmed numerous scars on the two oldest children, and similar scars and marks, to a lesser extent, on the younger children. The scars included horseshoe shaped scars similar to the shape of a belt buckle, loop marks typical of cord-whipping, circular scars consistent with cigarette burns and multiple linear scars. The children were transported to St. Joseph's Children's Center and later placed in a foster home. The charges against Williams were based on statements made by the children to medical personnel, police officers, social workers, their foster parent, and their psychologist.

The seven-day jury trial resulted in Williams' conviction on the felony involving the eight-year-old child, conviction on the gross misdemeanor involving the six-year-old child, and acquittal on two gross misdemeanor charges involving two of the younger children. The trial court departed

both dispositionally and durationally in sentencing Williams to 18 months in prison on the felony count and a concurrent 12–month sentence on the gross misdemeanor.

## ISSUES

1. Is Minn.Stat. § 609.377 (1986) unconstitutionally vague because "substantial emotional harm" is not defined?

2. Did the trial court err in including CRIM.JIG 13.31 (1986) in the jury instruction?

3. Did the trial court err in admitting expert testimony on behavioral characteristics of physically abused children and in admitting expert testimony on whether the alleged physical abuse caused substantial emotional harm?

4. Was the evidence sufficient to support the felony and gross misdemeanor convictions?

## ANALYSIS

### I.

█ Williams was convicted under a statute prohibiting intentional use of "unreasonable force or cruelty which causes substantial emotional harm to a child." Minn.Stat. § 609.377 (1986).[1] "If the punishment causes substantial bodily harm," the penalty is increased to a felony. *Id.*

The term "substantial emotional harm" is not defined by the statute. Williams contends that the absence of a definition makes the statute constitutionally infirm and requires that his conviction for the gross misdemeanor be vacated.

█ A criminal statute is not unconstitutionally vague unless it fails to define the criminal offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v.*

*Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). The level of definition need not achieve precision, but people of ordinary intelligence should not be required to guess its meaning. *State v. Simmons*, 280 Minn. 107, 110, 158 N.W.2d 209, 211 (1968). The degree of certainty required also depends on the nature of the crime and whether it is susceptible of precise statement. *State v. McCorvey*, 262 Minn. 361, 365, 114 N.W.2d 703, 706 (1962); *Simmons*, 280 Minn. at 112 n. 4, 158 N.W.2d at 212 n. 4.

The criminal conduct proscribed by Minn. Stat. § 609.377 (1986), is "an intentional act or a series of intentional acts [which] evidence unreasonable force or cruelty" and cause substantial emotional or substantial bodily harm. "Substantial bodily harm" is defined by Minn.Stat. § 609.02, subd. 7a (1988) but "substantial emotional harm" is not statutorily defined. Williams does not specifically challenge the indefiniteness of the term "emotional harm" but argues that use of the word "substantial" in conjunction with emotional harm gives law enforcement officials too much discretion in determining whether an offense has occurred.

Williams premises this argument on the dictionary definitions of substantial, which includes "having substance, material, not imaginary, true, real," and "considerable in importance, value, degree, amount or extent." *See, e.g.*, American Heritage Dictionary 1284 (New College Edition 1982). Williams argues that these definitions create a "continuum" along which police officers, prosecutors, and juries can arbitrarily determine what constitutes an offense under the statute.

We do not agree with this construction. The two different definitions of "substantial" do not define the extremes of a continuum, but rather represent *alternative* defi-

---

1. At the time of the alleged acts the statute read:
   A parent, legal guardian, or caretaker who, by an intentional act or a series of intentional acts, evidences unreasonable force or cruelty which causes *substantial emotional harm* to a child is guilty of malicious punishment of a child and may be sentenced to imprisonment for not more than one year or to payment of a fine of not more than $3,000, or both. If the punishment results in *substantial bodily harm,* that person may be sentenced to imprisonment for not more than three years or to payment of not more than $5,000, or both. Minn.Stat. § 609.377 (1986) (emphasis added).

nitions dependent upon the term being qualified. The existence of an alternative definition does not undermine specificity when the context of the usage makes the ordinary meaning clear. "Substantial" is a term employed in common usage and legal proceedings to mean "considerable size or amount." "Substantial emotional harm," similar to "substantial bodily harm" or "substantial injury," has a commonly accepted quantitative meaning. A person of ordinary intelligence could understand the degree of injury which, coupled with the intentional and unreasonable force or cruelty, is prohibited by the statute.

■ In analyzing this issue we keep in mind that vagueness challenges to statutes that do not involve first amendment freedoms must be examined in light of the facts of the particular case. *United States v. Powell*, 423 U.S. 87, 92, 96 S.Ct. 316, 319, 46 L.Ed.2d 228 (1975); *State v. Becker*, 351 N.W.2d 923, 925 (Minn.1984). Consequently, Williams must show that the malicious punishment statute "lacks specificity as to his own behavior and not as to some hypothetical situation." *State v. Currie*, 400 N.W.2d 361, 365 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. April 17, 1987).

The evidence at trial demonstrated severe and cruel physical punishments administered with belts, cords, sticks and cigarettes. The specific emotional harm inflicted on the six-year-old was evidenced in anxiety, hysteria and extremely inappropriate aggressive acts. The psychologist testified that the child was "guarded and evasive," "mistrusting," and subject to "dramatic mood swings that appear to be affected by her own internal experiences * * *." The foster parent corroborated this testimony and said that these behavioral problems intensified during the brief period when defendant was allowed supervised visitations with the children. This testimony supports the jury's determination that the child suffered substantial emotional harm.

Minn.Stat. § 609.377 (1986) is sufficiently definite to allow appellant to determine with reasonable certainty that his physical abuse of the children fell within the range of the conduct disapproved.[2]

## II.

■ In instructing the jury on the elements of the gross misdemeanor offense, the trial court used 10 Minnesota Practice CRIM. JIG 13.31 (1986) stating that

[t]here is no precise definition for the term substantial emotional harm. In determining whether [any of the children] did suffer emotional harm, you may consider but you are not limited to any evidence showing that any act or acts by defendant have resulted in behavior by [any of the children] of a type which would not normally be expected of this child or children and which would and which have interfered with the child's normal growth and development. * * * You must in the final analysis from all of the evidence that you have seen and heard in this courtroom and using your own good judgment and common sense determine the meaning of the term as it relates to [the children] and decide whether or not [any of the children] as a result of any conduct of defendant suffered substantial emotional harm.

On review of claims of error in jury instructions, the instructions must be considered as a whole. *State v. Larson*, 281 N.W.2d 481, 485 (Minn.1979), *cert. denied*, 444 U.S. 973, 100 S.Ct. 467, 62 L.Ed.2d 388 (1979). Williams argues that CRIM. JIG 13.31 "effectively usurped a legislative function by attempting to provide a definition of the term [substantial emotional harm] not necessarily dictated by the statutory language." We reject this argument because the instruction does not claim to provide a precise definition, but suggests in

**2.** Williams contends that the indefiniteness of the term "substantial emotional harm" caused the legislature to delete it as an element of the gross misdemeanor offense. *See* 1988 Minn. Laws ch. 655, §§ 2, 3 ("An act * * * eliminating the need to show emotional harm in proving * * * malicious punishment of a child"). No legislative history is provided and we are not persuaded that the deletion indicates problems in the definition. The amendment appears only to permit extension of the prohibition to a greater category of action.

general terms factors which the jury may consider.

This type of instruction is consistent with the supreme court's holdings that it is better for the trial court to make some minimal attempt to explain elements of offense rather than simply reading the statute. *See Rosillo v. State,* 278 N.W.2d 747, 749 (Minn.1979); *State v. Carlson,* 268 N.W.2d 553, 561 (Minn.1978); *State v. Thurston,* 299 Minn. 30, 35, 216 N.W.2d 267, 270 (1974).

The trial court concluded the instruction by saying that the jury should consider the evidence and use "good judgment and common sense" to determine the meaning of "substantial emotional harm." The jury instruction, considered as a whole, was a proper exercise of the trial court's obligation to instruct the jury and fairly stated the law.

### III.

■ During the trial, the children's treating psychologist provided expert testimony on the behavioral characteristics of physically abused children. The admission of an expert opinion generally rests within the sound discretion of the trial court. *State v. Myers,* 359 N.W.2d 604, 609 (Minn. 1984). The basic consideration in admitting expert testimony under Minn. R. Evid. 702 is whether it will assist the jury in resolving the factual questions presented. *Id.* A reviewing court will not reverse a trial court's determination unless there is an apparent error. *Id.*

■ In determining whether the testimony is helpful, the subject of the testimony must be outside the knowledge and experience of a lay jury *or* the testimony must "add precision or depth to the jury's ability to reach conclusions about [a] subject which is within their experience * * *." *State v. Helterbridle,* 301 N.W.2d 545, 547 (Minn.1980).

In *Myers,* the supreme court held that expert testimony on common emotional and psychological characteristics of children who are victims of sexual abuse was admissible. The court emphasized that the nature and effect of sexual abuse of children may not be within the knowledge and experience of a lay juror and that this testimony "is helpful and appropriate in cases of sexual abuse of children, and particularly of children as young [seven years old] as this complainant." *Myers,* 359 N.W.2d at 610; *see also State v. Hall,* 406 N.W.2d 503 (Minn.1987).

■ Williams argues that because this case involved only physical abuse, we must apply the reasoning of *State v. Soukup,* 376 N.W.2d 498 (Minn.Ct.App. 1985), *pet. for rev. denied* (Minn. Dec. 30, 1985). *Soukup* determined that it was error for the trial court to permit expert testimony on the behavioral traits of physically abused teenage children. *Soukup* is distinguishable from this case for a number of reasons, the most significant of which is that the complainant in *Soukup* was an 18-year-old who was able to testify at trial. The children in the present case were six and eight years old. The six-year-old child became "hysterical" and then "catatonic" and was unable to testify. The psychologist's testimony on mistrust, fear, poor self-esteem and denial was offered to assist the jury in evaluating the actions of the children.

The "common experience of a jury provides an adequate foundation for assessing the credibility of a teenager who is an alleged victim of physical abuse." *Soukup,* 376 N.W.2d at 503. However, it is significantly different to assess the behavior of a six-year-old who is unable to testify and an eight-year-old with inconsistent demeanor. The age of the victims, the inability to testify, and the lack of "common knowledge and experience" of the effects of unusually brutal treatment on the children are all factors which support the admissibility of the expert testimony.

■ In his second evidentiary challenge Williams argues that the trial court abused its discretion in allowing the expert to express his opinion as to the "ultimate issue" of whether the physical abuse had caused emotional harm to the children. In analyzing the admissibility of this testimony we focus on the applicability to the six-year-old

because the conviction involving the eight-year-old was for malicious punishment resulting in substantial bodily, rather than emotional harm.

"An expert witness may testify in the form of an opinion, Minn. R. Evid. 702, and opinion testimony is not objectionable merely because it embraces an ultimate issue to be decided by the jury, Minn. R. Evid. 704." *State v. Saldana*, 324 N.W.2d 227, 230 (Minn.1982). The test is whether "the expert's testimony, if believed, will help the jury to understand the evidence or to determine a fact in issue." *Myers*, 359 N.W.2d at 609 (citing *Moteberg v. Johnson*, 297 Minn. 28, 210 N.W.2d 27 (1973)).

In this case, we believe the expert's testimony was helpful to the jury. "Emotional harm" caused by physical abuse is not a phenomenon which the average juror would be able to relate to personal experiences or perceptions. The testimony was offered to assess the existence and extent of emotional harm suffered by a six-year-old victim of prolonged physical abuse who is unable to testify at trial. The expert's testimony on the link between the physical abuse and the resultant emotional harm fulfills the requirement of Minn. R. Evid. 702 of assisting the trier of fact to understand the evidence or to determine a fact in issue.

The treating psychologist, a doctoral candidate in counseling psychology, had 12 years of experience in working with abused children. He had worked with the six-year-old over a period of time. The trial court did not abuse its "broad discretion" in allowing the expert to testify on the existence of emotional harm resulting from physical abuse.

## IV.

"In reviewing a claim of insufficiency of the evidence, we are limited to ascertaining whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged." *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978). We are required to "take the view of the evidence most favorable to the state and must assume that the jury believed the state's witnesses and disbelieved any contradictory evidence." *Id.*

Numerous witnesses, including police officers, medical personnel, social workers, and the foster parent testified to the physical evidence of abuse. The defense witnesses included an official at the children's elementary school, Williams and his mother. Only the last two witnesses' testimony supported the defense position that V.B. alone was responsible for the abuse to the children.

Williams cites "inconsistencies" in the various statements made by the children. Human perception is not infallible and "[t]his is especially true when the testimony goes to the particulars of a traumatic and extremely stressful incident." *State v. Stufflebean*, 329 N.W.2d 314, 319 (Minn. 1983) (citations omitted).

Most of the "inconsistencies" pointed to by Williams were related to the details of specific incidents of abuse. There is no dispute, however, that the children suffered serious physical abuse, as evidenced by the scars and marks on their bodies. That the children may not have been able to sort out in their minds the details of the numerous "punishments" administered by appellant is hardly surprising. Neither is it any ground, in the face of the overwhelming evidence against Williams, to reverse the convictions.

## DECISION

Minn.Stat. § 609.377 (1986) is not unconstitutionally vague as applied to appellant's conduct and the trial court did not err in its instructions to the jury. The court properly allowed expert testimony on the behavioral characteristics of physically abused children and whether that abuse caused emotional harm to the six-year-old child. The evidence was sufficient to support the conviction.

Affirmed.