**STATE of Minnesota, Appellant,**

v.

**John FLEMING, Jr., Respondent.**

**No. A06–1170.**

Court of Appeals of Minnesota.

Dec. 12, 2006.

Mike Hatch, Attorney General, St. Paul, MN; and Susan Gaertner, Ramsey County Attorney, Mark N. Lystig, Assistant County Attorney, St. Paul, MN, for appellant.

Patrick McGee, Mark D. Nyvold, Special Assistant State Public Defenders, St. Paul, MN, for respondent.

Considered and decided by WRIGHT, Presiding Judge; RANDALL, Judge; and HALBROOKS, Judge.

## OPINION

WRIGHT, Judge.

Appellant State of Minnesota challenges the district court's pretrial order dismissing a charge of unlawful possession of a firearm, arguing that the district court erred in ruling that Minn.Stat. § 624.713, subd. 1(b) (2004), does not prohibit possession of a BB gun by a person convicted of a violent crime. Appellant contends that, notwithstanding the exclusion of a BB gun from the statutory definition of "pistol," respondent's possession of a BB gun was unlawful under the operative definition of "firearm." We reverse and remand.

## FACTS

Respondent John Fleming, Jr. was arrested and charged with unlawful possession of a firearm, a violation of Minn.Stat. § 624.713, subd. 1(b) (2004) (prohibiting possession of a "pistol or semiautomatic military-style assault weapon or ... any other firearm" by a person convicted of a crime of violence). At the time of his arrest, Fleming possessed a black metal Walther PPK/S BB gun. Fleming had been twice convicted of second-degree assault, and his right to possess a firearm had not been restored.

Fleming moved to dismiss the charge, arguing that the BB gun was not a firearm under Minn.Stat. § 624.713, subd. 1(b). The district court dismissed the charge, concluding that, although a BB gun is a "firearm," prosecution under Minn.Stat. § 624.713, subd. 1(b), for possession of a BB gun would negate the statute's exclusion of a BB gun from the statutory definition of "pistol." This appeal followed.

## ISSUE

Does Minn.Stat. § 624.713, subd. 1(b) (2004), which prohibits a person who has been convicted of a crime of violence from possessing a pistol or any other firearm, prohibit possession of a BB gun?

## ANALYSIS

The state may appeal an order dismissing a complaint for lack of probable cause if it is "based on a legal determination, such as the interpretation of a statute." *State v. Linville,* 598 N.W.2d 1, 2 (Minn.App.1999) (quotation omitted). To prevail, the state must clearly and unequivocally show that the district court erred in its judgment and the error will have a "critical impact" on the state's ability to prosecute. *State v. Hanson,* 583 N.W.2d 4, 5 (Minn.App.1998), *review denied* (Minn. Oct. 29, 1998). As an initial

matter, we consider whether the district court's order has a critical impact on the state's case.

The district court interpreted Minn.Stat. § 624.713, subd. 1(b) (2004), and concluded that the statute does not prohibit a person convicted of a crime of violence from possessing a BB gun. The district court dismissed the complaint for lack of probable cause, which satisfies the critical-impact requirement.

This case presents a question of statutory interpretation, which we review de novo. *State v. Anderson,* 666 N.W.2d 696, 698 (Minn.2003). When interpreting a statute, we must "ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2004). In doing so, we first determine whether the statute's language on its face is ambiguous. *Am. Tower, L.P. v. City of Grant,* 636 N.W.2d 309, 312 (Minn.2001). A statute is ambiguous only when its language is subject to more than one reasonable interpretation. *Amaral v. Saint Cloud Hosp.,* 598 N.W.2d 379, 384 (Minn.1999). We construe statutory words and phrases according to their plain and ordinary meaning. *Am. Tower, L.P.,* 636 N.W.2d at 312 (citing *Frank's Nursery Sales, Inc. v. City of Roseville,* 295 N.W.2d 604, 608 (Minn.1980)). And we presume that "the legislature intends the entire statute to be effective." Minn.Stat. § 645.17 (2004). When the legislature's intent is clearly discernable from a statute's plain and unambiguous language, we interpret the language according to its plain meaning without resorting to other principles of statutory construction. *State v. Anderson,* 683 N.W.2d 818, 821–22 (Minn.2004); *see also* Minn.Stat. § 645.08(1) (2004) (providing that words are construed according to their common usage). If a criminal statute is not ambiguous, the rule of lenity, which requires us to resolve questions of interpretation in favor of lenity toward the defendant, has no application. *State v. Loge,* 608 N.W.2d 152, 156 (Minn.2000).

█ Fleming was charged under Minn. Stat. § 624.713, subd. 1(b), which provides in pertinent part: "The following persons shall not be entitled to possess a pistol or semiautomatic military-style assault weapon or . . . any other firearm: . . . a person who has been convicted of . . . committing . . . a crime of violence." The operative statutory definition of "pistol" excludes BB guns. Minn.Stat. § 624.712, subd. 2 (2004). But the term "firearm" is not defined within this statutory scheme.

The district court determined that Fleming possessed a "firearm" but dismissed the charge because the applicable statutory definition of "pistol," *id.,* specifically excludes BB guns. This construction of the statute, however, does not give effect to the phrase "any other firearm" in section 624.713, subdivision 1. Unless the applicable definition of "firearm" also excludes BB guns, the district court's construction of the statute is erroneous. Thus, we examine the definition of "firearm" to determine whether section 624.713, subdivision 1(b), also excludes BB guns from the provision that prohibits a person convicted of a crime of violence from possessing a firearm.

Because section 624.712, which defines both "pistol" and "semiautomatic military-style assault weapon," does not define "firearm," we look to other sources for a definition of the term. We know from the Minnesota Supreme Court's interpretation of Minn.Stat. § 609.02, subd. 6 (1974), which defines "dangerous weapon" to include firearms, the term "firearm" should be broadly construed. *State v. Seifert,* 256 N.W.2d 87, 88 (Minn.1977). As in the instant case, at issue in *Seifert* was whether a BB gun was a firearm. The defendant in *Seifert* was charged with using a

dangerous weapon during the commission of a robbery. *Id.* Because he possessed a BB gun, the defendant challenged the district court's finding that he used a "dangerous weapon," defined by Minn.Stat. § 609.02, subd. 6, as "any firearm, whether loaded or unloaded." *Id.* The supreme court applied the definition of "firearm" set forth in Minn.Stat. § 97.40, subd. 34 (1974), the game-and-fish law (now codified at Minn.Stat. § 97A.015, subd. 19 (2004)). *Id.* Under this statutory definition, a firearm is " 'any gun from which a shot or a projectile is discharged by means of explosive, gas, or compressed air.' " *Id.* (quoting Minn.Stat. § 97.40, subd. 34).

Fleming contends that, because the defendant in *Seifert* admitted that his accomplice was in possession of a firearm, the supreme court's use of the game-and-fish definition to determine that the BB gun was a firearm is mere dictum. But we cannot ignore the supreme court's definition of the term "firearm" simply because it may be considered judicial dictum. *See State v. Rainer,* 258 Minn. 168, 177, 103 N.W.2d 389, 396 (1960) (stating that judicial dictum is entitled to "much greater weight than mere obiter dictum and should not be lightly disregarded"). The supreme court's use of section 97.40, subdivision 34, to define "firearm" in *Seifert* occurred before statutory amendments to section 624.713, subdivision 1, in 1994, which created the statutory language that we now interpret. We presume that the legislature acts with full knowledge of previous statutes and existing caselaw. *Pecinovsky v. AMCO Ins. Co.,* 613 N.W.2d 804, 809 (Minn.App.2000), *review denied* (Minn. Sept. 26, 2000). And under our statutory cannons of construction, it is presumed

that, when the Minnesota Supreme Court has construed the language of a law, the legislature in subsequent laws on the same subject matter intends the same construction to be placed upon such language. Minn.Stat. § 645.17(4) (2004). By choosing not to define "firearm" for purposes of section 624.713, the legislature presumptively adopted the Minnesota Supreme Court's definition. *See State v. Newman,* 538 N.W.2d 476, 478 (Minn.App.1995) (relying on presumptive-adoption theory to use Minn.Stat. § 97.40, subd. 34, to conclude that a BB gun is a "firearm" under the felony drive-by-shooting statute, and noting that "it probably would not matter to the victim of a drive-by-shooting whether the weapon used in the attack was powered by air or by an explosive"), *review denied* (Minn. Nov. 30, 1995).

It is undisputed that Fleming has been convicted of crimes of violence and that he possessed a black metal Walther PPK/S BB gun, which shoots a pellet by means of a CO2 cartridge. Fleming's gas-cartridge BB gun falls within the definition of "firearm" applied in *Seifert,* which includes any gun from which a shot may be discharged by "gas[ ] or compressed air." Minn.Stat. § 97A.015, subd. 19. Presuming, as we must, that the legislature acted with full knowledge of the then-existing caselaw applying the game-and-fish statutory definition of "firearm," and giving effect to the entire statutory scheme, we hold that, even though a BB gun is not a "pistol," Fleming was prohibited from possessing a BB gun under the prohibition in Minn.Stat. § 624.713, subd. 1, against possessing a firearm.[1] Thus, the district court erred by dismissing the charge on this ground.

---

1. We observe that the state could have charged Fleming under section 609.165, which prohibits a person who has been convicted of a crime of violence from possessing a "firearm" without any reference to pistols.

Minn.Stat. § 609.165, subd. 1b(a) (2004). A conviction under section 609.165 bars a conviction for the same incident under section 624.713. *Id.,* subd. 1b(b) (2004). This proscription suggests that the two statutes are

## DECISION

Because the operative definition of "firearm" includes a BB gun, Minn.Stat. § 624.713, subd. 1 (2004), which prohibits a person convicted of a crime of violence from possessing a "pistol ... or any other firearm," prohibits possession of a BB gun, notwithstanding the exemption of BB gun from the definition of "pistol" set forth in Minn.Stat. § 624.712, subd. 2 (2004). We, therefore, reverse the district court's dismissal of the charge and remand for further proceedings.

**Reversed and remanded.**

intended to be coextensive. *See* Minn.Stat. § 645.16(5) (stating that intention of legislature may be discerned from other laws on same or similar subjects).